# Jones *v.* Wilson.

*Bill in Equity to establish and enforce Trust in Lands.*

1. *Deed of gift to married woman, for benefit of family; what interest children and husband take.*—A deed which recites that, "by the bounty and sympathy of the people, exhibited towards Mary W. and her family, owing to losses by fire sustained by her husband, who thereby became insolvent to a large amount, the party of the first part hath received amounts subscribed by the said people, to be applied for the benefit of said family, to secure to them a support;" that these amounts "have been invested by him in the property hereinafter described, whereon is a confectioner's shop," and that the deed is "made in pursuance of the objects of said donation;" and which conveys by quit-claim, to the said Mary W., "party of the second part, her heirs and assigns forever," the property described, "with all the furniture and stock in

trade pertaining to said store, or confectioner's shop, all the debts due to the same, and the balance due on said subscription lists"; with a stipulation that "nothing herein contained shall be construed against the rights of any person or persons against this property, for supplies furnished in trade, or labor done, or articles supplied for building or carrying on the trade, contracted for by her said husband as agent of the party of the second part,"—does not fasten any trust on the property, such as a court of equity can enforce in favor of the children as beneficiaries, but vests the absolute title in the wife, contemplating that she shall support the family by carrying on the business, and giving her large powers to charge and dispose of the property; nor does it exclude the husband's statutory rights, if he should survive his wife.

2. *Husband's interest in wife's lands.* — On the death of the wife intestate, having a statutory separate estate, the husband is entitled to the use of the realty during his life (Code of 1876, § 2714).

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 21st August, 1874, by Alexander S. Wilson and others, children of Mary A. and George Wilson, against William A. C. Jones, said George Wilson, Samuel Brown, and Adolphe Brown; and sought to establish and enforce a trust in a certain house and lot, which said W. A. C. Jones claimed as his own, and which was in the possession of said Samuel and Adolphe Brown as his tenants, and to make said defendants account for the rents and profits. The complainants asserted title to the said house and lot under a deed from Thomas B. Wetmore, a copy of which was made an exhibit to their bill, and which was in these words:

"This indenture, made between Thomas B. Wetmore, of the first part, and Mary A. Wilson of the second part, witnesseth, that whereas, by the bounty and sympathy of the people exhibited towards the said Mary and her family, owing to loss by fire suffered by George Wilson, her husband, who became thereby insolvent to a large amount, the party of the first part hath received amounts, subscribed by said people, to be applied for the benefit of said family, to secure to them a support; and whereas said amounts have been invested in the property hereinafter described, besides in a dwelling-house and lot purchased from James Cobbs; and whereas these presents are made in pursuance of the objects of said donation: now therefore, in consideration of the premises, the party of the first part conveys and quit-claims to the party of the second part, her heirs and assigns forever, the east half of lot number one in the town of Livingston, whereon is now a confectioner's shop, being the same property situated in said town and county bought by the party of the first part from P. G. Nash, trustee, for the purpose aforesaid, as shown by deed recorded in said county in book O, page 673, except the part adjoining said half lot, which was sold subsequently to H. H. Harris by the party

of the first part; also, all the furniture and stock in trade pertaining to said store, or confectioner's shop; also, all the debts due the same, and the balance due on said subscription lists, a schedule of which is hereto appended as a part of this deed; to have and to hold, subject to the balance due the party of the first part, $192.95, being excess of amounts advanced by him over and above the receipts, as will appear by reference to a complete statment in account hereunto appended, and which is made a part of this deed. It is understood that nothing herein contained shall be construed against the rights of any person or persons against this property, for supplies furnished in trade, *or labor done, or articles supplied for building or carrying on the trade,*\* contracted for by the said George Wilson, as agent of the party of the second part. It is understood, also, that Dainwood, Sanders & Nichols have been paid the balance due for building the last house, by said Wilson, agent, out of the proceeds of the property in trade, and in part by their own liberal subscription. The lumber to build the last house was furnished by Mr. William Jamison,—a liberal and generous subscription. It is understood, also, that the party of the first part shall be held harmless by the property hereby conveyed against all demands whatever, either against him or the property, arising out of its acquisition or management; and this conveyance, which is only a quit-claim, is made subject to this provision. In testimony whereof, the parties of the first and second part hereunto set their hands and seals, June 8, 1859."

This deed was signed by both the parties, and was acknowledged by both of them before a justice of the peace. Mrs. Mary Wilson died on the 21st November, 1864. The defendant Jones, in his answer, alleged that Mrs. Mary A. Wilson, in carrying on the business of the confectioner's shop, as contemplated under the provisions of said deed from Wetmore, became largely indebted to Parker, Lake & Co., merchants in Mobile, and, to secure this indebtedness, she and her said husband conveyed the property, by deed dated the 3d April, 1861, to James Cobbs as trustee, authorizing him to sell the property, if default should be made in the payment of this indebtedness, on or before the 1st April, 1862, and apply the proceeds of sale to the payment of said debt; that said Cobbs resigned, and another trustee was duly appointed in his place, who, on the 26th August, 1866, sold the property under the provisions of the deed; that said Parker, Lake & Co. became the purchasers at the

---

\*The italicized words are in the deed contained in the first transcript, but not in the transcript sent up on *certiorari.—Rep.*

trustee's sale, and afterwards became bankrupt; and that respondent purchased the property at the sale by their assignee in bankruptcy, and received a conveyance from him. He insisted on the validity of all these conveyances, and copies of them were made exhibits to his answer; and he demurred to the bill for want of equity, and because the complainants had an adequate remedy at law. It is not necessary to state the evidence, under the view taken of the case by this court.

On final hearing, on pleadings and proof, the chancellor overruled the demurrer, and held that the deed of trust for the benefit of Parker, Lake & Co. was null and void, because procured by fraud and duress, and the sale made under it was also void. He therefore rendered a decree for the complainants, and ordered an account of the rents and profits of the property. The overruling of the demurrer to the bill, and the final decree, are now assigned as error.

R. H. SMITH, THOS. COBBS, and THOS. B. WETMORE, for appellants.—If the deed from Wetmore created a statutory separate estate in Mrs. Wilson, then no right of action exists in favor of her children, until after the death of George Wilson, her husband, who is made a defendant to the bill.— Rev. Code, § 2379; *Marshall v. Crow*, 29 Ala. 280. But the deed, properly construed, creates in Mrs. Wilson an equitable separate estate, which she had the power to charge, incumber, mortgage, or alienate at will.—*Short v. Battle*, 52 Ala. 156; *McMillan v. Peacock*, at this term. The deed of trust on the property was executed by the husband and wife, in conformity with statutory requisitions; and while the proof shows persuasion and solicitation to induce the wife to sign it, it utterly fails to show duress, legal coercion, or false and fraudulent representations.—*Miller v. Marx*, and *Coleman v. Smith*, at the last term; *Graham v. Anderson*, 42 Illinois, 514.

SNEDECOR & COCKRELL, *contra.*—The complainants do not file their bill as remainder-men, but as purchasers and beneficiaries under the deed from Wetmore. They claim that the property is charged with an express trust in their favor, which could not be defeated by any act of said Mary Wilson, or of her and her husband jointly; and of which the defendant Jones had notice, actual and constructive, when he purchased the property. They insist that the property was purchased and conveyed for the benefit of the *family* of said Mary and George Wilson, and was placed beyond the power of alienation by them. In their view of the case, it is

immaterial whether the interest of Mrs Wilson, under the deed, was an equitable or statutory separate estate; and equally immaterial whether the deed of trust was procured by fraud, coercion, or other improper influence, or not. Liens existing on the property while the title was in Wetmore, are expressly preserved by his deed to Mrs. Wilson; but these provisions can not be construed to authorize the creation of future liens or charges by her or her husband, and such a construction would defeat the very objects of the donation.

STONE, J.—A proper construction of the deed from Thomas B. Wetmore, conveying the property in controversy to Mary A. Wilson, will determine most, if not all the questions presented by this record. The deed describes Thomas B. Wetmore as the party of the first part, and Mrs. Wilson as party of the second part, and recites that, "by the bounty and sympathy of the people exhibited towards the said Mary and her family, owing to loss by fire suffered by George Wilson, her husband, who became thereby insolvent to a large amount, the party of the first part had received amounts subscribed by the people to be applied for the benefit of said family, to secure to them a support"; and after reciting that the moneys thus received had been invested in the property afterwards conveyed, and that such conveyance was made " in pursuance of the object of said donation," then proceeded as follows : " Now, therefore, in consideration of the premises, the party of the first part conveys and quit-claims to the party of the second part, her heirs and assigns forever, the east half of lot No. 1, in the town of Livingston, whereon is now a confectioner's store; . . . also, all the furniture, and stock in trade pertaining to said store, or confectioner's shop ; also, all the debts due the same, and the balance due on said subscription list, . . subject to the balance due the party of the first part, of one hundred and ninety-two 95-100 dollars, being excess of amounts advanced by him over and above the receipts. . . . It is understood that nothing herein contained shall be construed against the rights of any person or persons, against this property, for supplies furnished in trade, or labor done, or articles supplied in building, or carrying on the trade, contracted for by George Wilson, as agent of the party of the second part."

The foregoing are all the clauses of the deed, material to the present inquiry.

There are many nice distinctions drawn in the books, as to the meaning of the word family; and the general result is, that its construction depends mainly on the context, the

nature of the property, and the use to which it is to be applied.—See 1 Perry on Trusts, § 117 ; 2 Jar. on Wills, 25 *et seq.* We consider it unnecessary in this case to collate the authorities, or to enter into their discussion. The present deed, in the same clauses, conveys real and personal property ; and whatever rights and interests are conferred in one species of property, are conferred in every species mentioned in the conveyance.—*Alford v. Alford*, at December term, 1876 ; 2 Jarman on Wills, 29.

The present deed not only conveys a store, or shop, but also its contents of furniture and stock in trade, and dues to the establishment, and unpaid subscription dues ; and, also, manifestly contemplates that the trade and business be kept up, by selling the goods, replacing the stock, and selling again. And it places all the property in the name of Mrs. Mary A. Wilson, and provides that all the property conveyed —real and personal—shall be liable for articles furnished in trade, &c., "contracted for by George Wilson, as agent" of Mrs. Wilson. Under these very explicit and large powers, it is clear that the *corpus* of the personal property was expected to be disposed of, and that the real property might be charged and incumbered, and, not improbably, disposed of, in the prosecution of the business.

We do not think there is shown, in the frame of this deed, any intention to fasten a trust on the property, such as a court can enforce. On the contrary, we hold, as the deed expresses, that its purpose was to vest the title in Mrs. Wilson, her heirs, and assigns, with certain express powers to charge it, not usual in regard to property owned by married women ; and that any bounty intended for the family, expended itself in putting Mrs. Wilson in a business, which, it was hoped, would enable her to maintain them properly. It follows from this, that any interest the present complainants can assert to this property, must be as heirs of Mrs. Wilson ; not as beneficiaries and purchasers under the deed.

2. The bill in the present case shows that George Wilson, the husband, was in life when it was filed ; and for aught that we can know, he is still in life. There is nothing in the deed to exclude his marital right of succession, under the statute (Code of 1876, § 2714) which secures to him a life-estate in the realty. He joined his wife in the trust deed under which Jones purchased ; and if any one can show that nothing remained due on the debt secured by said trust deed, the said George Wilson must become the actor in such suit. It therefore becomes unnecessary to inquire whether or not any thing remained due to Parker, Lake & Co., as such inquiry can not affect the result of this case.

The decree of the chancellor is reversed; and this court, proceeding to render the decree which the Chancery Court should have rendered, doth order and decree, that the complainants' bill be dismissed, at the cost of the adult complainants, except Anna Matilda Rawls, incurred in the court below, and in this court.